RUTAN & TUCKER, LLP
Michael Adams (State Bar No. 185835)
madams@rutan.com
Heather Herd (State Bar No. 217521)
hherd@rutan.com
Chelsea Epps (State Bar No. 261026)
cepps@rutan.com
611 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-1931
Telephone: 714-641-5100
Facsimile:  714-546-9035

Attorneys for Plaintiff
California Strawberry Commission

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| CALIFORNIA STRAWBERRY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, and DOES 1 through 50,<br><br>Defendants. | Case No. RG13698448<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>(1) **BREACH OF CONTRACT**<br>(2) **BREACH OF IMPLIED CONTRACT**<br>(3) **CONVERSION**<br>(4) **DECLARATORY RELIEF** |

Plaintiff California Strawberry Commission (the "Commission") hereby alleges for its First Amended Complaint as follows:

## PARTIES

1. The Commission is a state-chartered agency of the California Department of Food and Agriculture, headquartered in Watsonville, California. The Commission represents the California strawberry industry, including its growers, shippers and processors. Its mission is to promote California strawberries and manage industry issues with a focus on production and nutrition research, trade relations, public policy, marketing and communications.

-1-

FIRST AMENDED COMPLAINT

2.      Defendant The Regents of the University of California (the "University") is, and at all times relevant to this action was, a California Constitutional Corporation authorized and empowered to administer the public trust known as the University of California, with full powers of organization and government thereof.  The University administers, among other things, the University of California at Davis.

3.      The Commission is unaware of the true names and capacities, whether individual, corporate, associate or otherwise of Does 1 through 50, inclusive, and therefore sues these defendants by such fictitious names.  The Commission will amend this pleading to show their true names and capacities when they have been ascertained, or upon proof at trial.  The Commission is informed and believes that each of the Doe defendants is responsible for the liabilities, breaches, damages, and harms alleged in this action.

4.      The Commission is informed and believes and on that basis alleges that at all relevant times the University and the Doe defendants, and each of them, were the agents, servants and employees of each of the other defendants, and were acting within the full course and scope of said agency and employment with the full knowledge and consent, either express or implied, of each of the other defendants and are responsible therefore.

## NATURE OF THE ACTION

5.      The Commission has spent millions of dollars over the past thirty years funding the University's research program for breeding new strawberry varieties (the "Pomology Program") to promote a *public* breeding program for the benefit of the California strawberry industry.  The University now threatens to privatize the Pomology Program by granting a license to a new business venture of the very breeders the Commission entrusted as stewards of the public Pomology Program.  The University thereby seeks to take the fruits -- both literally and figuratively -- of decades-long research that the Commission funded for the benefit of the California strawberry industry and hand them over to private financial interests.

/ / /

/ / /

## BACKGROUND FACTS

6. The California State Legislature has determined that the California strawberry industry furthers the public interest. The Legislature established the Commission in order to promote the public interest by, among other things, creating and managing a research program to develop improved strawberry varieties.

7. The University has its origins in the Morrill Act signed into law by President Abraham Lincoln on July 2, 1862, which created the land-grant universities through the donation of public land. The University of California was founded in 1868 from these public resources. Subsequent legislation created the University Farm at Davis, later becoming the University of California at Davis, focusing on agricultural-related research. Owing to its origins as a land grant university, one of the University's primary missions is to disseminate research results and translate scientific discoveries into technological innovations for the public benefit.

8. Consistent with the University's land grant mission, the Pomology Progam is a public program that makes improved strawberry varieties available to the California strawberry industry.

9. The Pomology Program relies on the development, maintenance and improvement of the strawberry germplasm. A germplasm is a living tissue built upon, improved on, and modified over many years from which new strawberry varieties are developed. It can be in the form of a plant part such as a stem, leaf, pollen, or a few cells that can be cultured into a whole plant.

10. Since 1980, the Commission has funded the Pomology Program in exchange for access to the results of the program, which include the germplasm, the data necessary to understand and further develop the germplasm, and the strawberry varieties grown from the germplasm.

11. Each year from 1980 through 2012, the University submitted a Project Plan/Research Grant Proposal ("Project Plan") requesting a specific sum of money from the Commission to fund the Pomology Program.

12. Each year from 1980 through 2012, the Commission and the University entered into a Research Agreement incorporating the Project Plan. Each Research Agreement:

    a. Provides that University researchers Douglas Shaw ("Shaw") and Kirk Larson ("Larson") will perform services for the Commission in accordance with the Project Plan;

    b. Provides that the immediate goal of the research is the release of new strawberry varieties and that the longer-term goal is the development of an improved germplasm from which new strawberry varieties can be grown;

    c. Sets forth the amount the Commission will pay to the University;

    d. Provides that all results achieved in connection with the program shall be made available to the Commission;

    e. Provides that communication of the research to the Commission is of critical importance; and

    f. Sets forth minimum obligations to facilitate the transfer of the research to the Commission.

13. In accordance with the Research Agreements, from 1980 through 2012, the University developed the germplasm and used the germplasm to grow improved strawberry varieties. The Commission's strawberry growers obtained access to the new strawberry varieties grown from the germplasm by, among other things, acquiring clones of the new varieties from the University.

## THE UNIVERSITY'S THREATENED PRIVATIZATION OF THE POMOLOGY PROGRAM

14. The germplasm and data developed in the Pomology Program are required to successfully breed new strawberry varieties from, and to further develop, the germplasm.

15. Pursuant to the University's policies and agreements with Shaw and Larson, the University, as between it and Shaw and Larson, owns the germplasm and all data related to the Pomology Program. The University's policies and agreements with its

researchers are aimed to ensure that research and inventions are used to benefit the public as opposed to private interests.

16.     The University's policies and agreements with Shaw and Larson, as well as the Research Agreements, require Shaw and Larson to fully disclose all data necessary to understand and further develop the germplasm.

17.     Shaw and Larson recently stated their intent to resign from the University and take the results of the Pomology Program, including without limitation the germplasm and the data necessary to understand and further develop the germplasm, to establish their own private company.

18.     Despite Shaw and Larson's obligation to fully disclose the data necessary to understand and further develop the germplasm, Shaw and Larson have instead leveraged that data to negotiate a private license to the germplasm with the goal of enriching themselves at the expense of those who paid for this initial and ongoing investment. In so doing, Shaw and Larson have withheld data for themselves as a bargaining chip to extract a private license to the germplasm from the University.

19.     Rather than enforcing the Commission and the University's rights to the data, the University is instead negotiating with Shaw and Larson's private investment group in a quid pro quo bartering a private license to the germplasm in exchange for the data.

20.     The Commission objected to the University's plans to enter into a private license agreement with Shaw and Larson because, among other reasons, the Commission and the University have a lawful right to the data, which the University should enforce in order to prevent Shaw and Larson from using the data as a bargaining chip.

21.     Private licensing of the germplasm will have a deleterious impact on the Commission and the California strawberry industry by gifting Shaw and Larson's private enterprise an unfair competitive advantage over the public Pomology Program and at the expense of the California strawberry industry. Privatization of the public Pomology Program will further harm the California strawberry industry by substantially increasing

production costs and siphoning off profits to private interests that otherwise could be used to further improve the germplasm for the benefit of the California strawberry industry.

22.     The University's conduct jeopardizes the integrity of the germplasm, including the living plants from which new varieties are grown. Shaw and Larson have a disabling conflict of interest between their obligations to the Commission and the University with respect to the public Pomology Program, on the one hand, and their personal financial interests that they seek to further by obtaining a license to the germplasm, on the other. The University has failed to take the necessary steps to document, maintain and preserve the germplasm for the Commission's benefit. Instead, in a classic case of the fox guarding the henhouse, the University delegated its responsibility for preserving the germplasm to Shaw and Larson.

23.     Because of the imminent harm to the Commission and the California strawberry industry threatened by the University's conduct, the Commission is forced to bring this lawsuit to protect its rights and the well-being of the California strawberry industry.

<b><u>FIRST CAUSE OF ACTION</u></b>
<b>(Breach of Contract)</b>

24.     Plaintiff realleges and incorporates by reference paragraphs 1 through 23 as though set forth in full.

25.     From 1980 through 2012, the Commission and the University entered into a series of Research Agreements.

26.     Except for obligations that were excused, waived, discharged, or which the University is estopped to assert, the Commission has performed all terms, conditions and obligations on its part to be performed under the Research Agreements.

27.     The University has materially breached the Research Agreements by, among other things, failing to provide the Commission with the results of the Pomology Program, including without limitation the germplasm and the data necessary to understand and further develop the germplasm. The University has further breached the Research

1  Agreements by repudiating its obligation to provide the Commission access to the new
2  strawberry varieties resulting from the germplasm and failing to take the necessary steps to
3  document, maintain and preserve the germplasm for the Commission's benefit.

4    28.   Implicit in the Research Agreements is a covenant of good faith and fair
5  dealing obligating the parties to act towards each other in good faith, to deal fairly with
6  one another, to make all material disclosures, and not do anything that might deprive the
7  other of the expectations and benefits of the Research Agreements and obligating each
8  party to do everything that the Research Agreements presuppose to accomplish its purpose.
9  For the reasons stated herein, the University has breached the covenant of good faith and
10 fair dealing.

11   29.   The University's wrongful conduct alleged herein will cause great and
12 irreparable injury to the Commission unless and until enjoined by order of this Court.

13   30.   The Commission is informed and believes, and based thereon alleges, that
14 without issuance of an injunction by this Court, the University will continue the acts herein
15 alleged.

16   31.   The Commission has no adequate remedy at law for this imminent and
17 irreparable harm.

18   32.   As a further direct and proximate result of the University's acts of breach
19 described herein, the Commission has suffered damages in excess of the jurisdictional
20 amount of this Court in an amount to be proved at trial, together with penalties and/or
21 interest as allowed by law.

22                    **SECOND CAUSE OF ACTION**
23                      **(Breach of Implied Contract)**

24   33.   The Commission realleges and incorporates by reference paragraphs 1
25 through 32 as though set forth in full.

26   34.   Alternatively, an implied-in-fact contract exists requiring the University to:
27 (1) provide the Commission with the results of the Pomology Program, including without
28 limitation the germplasm and the data necessary to understand and further develop the

germplasm; (2) provide the Commission access to the new strawberry varieties grown from the germplasm; and (3) document, maintain and preserve the germplasm for the Commission's benefit.

35.     This contract is implied from at least the following conduct: (1) the University sought funding from the Commission every year from 1980 through 2012 for the public Pomology Program, the goal of which is to develop an improved germplasm from which new strawberry varieties can be grown and supplied to the California strawberry industry; (2) the Commission provided the requested funding every year from 1980 through 2012; (3) the University acknowledged its obligation to communicate the results of the Pomology Program to the California strawberry industry; and (4) the University provided the Commission access to the new strawberry varieties grown from the germplasm.

36.     The University has materially breached the Research Agreements by, among other things, failing to provide the Commission with the results of the Pomology Program, including without limitation the germplasm and the data necessary to understand and further develop the germplasm.  The University has further breached the Research Agreements by repudiating its obligation to provide the Commission access to the new strawberry varieties grown from the germplasm and failing to give reasonable assurances that they will take the necessary steps to document, maintain and preserve the germplasm for the Commission's benefit.

37.     The University's wrongful conduct alleged herein will cause great and irreparable injury to the Commission unless and until enjoined by order of this Court.

38.     The Commission is informed and believes, and based thereon alleges, that without issuance of an injunction by this Court, the University will continue the acts herein alleged.

39.     The Commission has no adequate remedy at law for this imminent and irreparable harm.

40.     As a further direct and proximate result of the University's acts of breach

1  described herein, the Commission has suffered damages in excess of the jurisdictional
2  amount of this Court in an amount to be proved at trial, together with penalties and/or
3  interest as allowed by law.

## THIRD CAUSE OF ACTION

### (Conversion)

41. The Commission realleges and incorporates by reference paragraphs 1 through 40 as though set forth in full.

42. The Commission has an immediate right to possession of the results of the Pomology Program, including without limitation the germplasm and the data necessary to understand and further develop the germplasm.

43. The University has intentionally and substantially interfered with the Commission's rights by failing to provide the Commission the results of the Pomology Program as described herein.

44. The Commission did not consent to the University's conduct.

45. The Commission has suffered damages in excess of the jurisdictional amount of this Court in an amount to be proved at trial, together with penalties and/or interest as allowed by law.

46. The University's conduct was a substantial factor in causing the Commission's damages.

## FOURTH CAUSE OF ACTION

### (Declaratory Relief)

47. The Commission realleges and incorporates by reference paragraphs 1 through 46 as though set forth in full.

48. An actual controversy has arisen and now exists between the Commission, on the one hand, and the University, on the other hand, regarding their respective rights, remedies, liabilities, and obligations under the contracts between these parties.

49. The Commission contends that the University is required (1) to provide the Commission access to the results of the Pomology Program, including without limitation

the germplasm, the data necessary to understand and further develop the germplasm, and the varieties of strawberries grown from the germplasm, and (2) sufficiently document, maintain and preserve the germplasm for the Commission's benefit.

50. The Commission is informed and believes and on that basis alleges that the University disputes each of these contentions.

51. The Commission thus seeks a judicial determination of the respective rights, remedies, and obligations of the parties. Such a declaration is appropriate at this time to allow the parties to ascertain their respective rights, duties, and obligations.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission prays for judgment against the University as follows:

1. For a preliminary and permanent injunction: (1) enjoining the University from denying the Commission access to the results of the Pomology Program, including without limitation the germplasm, the data necessary to understand and further develop the germplasm, and the varieties of strawberries grown from the germplasm, and (2) directing the University to document, maintain and preserve the germplasm for the Commission's benefit.

2. For the imposition of a constructive trust over the germplasm, including without limitation the plant material and the data necessary to understand and further develop the germplasm;

3. For damages in excess of this Court's minimum jurisdiction according to proof; and

4. For such other and further relief as the Court deems just and proper.

Dated: March 5, 2014

RUTAN & TUCKER, LLP

By: _____
Michael Adams
Attorneys for Plaintiff
California Strawberry Commission